INTERNATIONAL TELEPHONE AND TELEGRAPH COR-
PORATION, A CORPORATION OF THE STATE OF DELA-
WARE, PLAINTIFF, ATLAS STEEL PRODUCTS COM-
PANY, A NEW JERSEY CORPORATION, PLAINTIFF-RE-
SPONDENT AND CROSS-APPELLANT, v. ENVIRCO SER-
VICES, INC., A CORPORATION OF THE STATE OF NEW
JERSEY, KOLKER CONSTRUCTION CORP., A CORPORA-
TION OF THE STATE OF NEW JERSEY, FRANK LAPEY-
ROLERIE, DOUGLAS FORD AND CARL ROSS, DEFEND-
ANTS, CENTRAL PARKWAY ASSOCIATES, A PARTNER-
SHIP, DEFENDANT-APPELLANT AND CROSS-RESPON-
DENT.

Superior Court of New Jersey
Appellate Division

Argued September 13, 1976—Decided September 28, 1976.

Before Judges CARTON, KOLE and LARNER.

*Mr. Burton L. Eichler* argued the cause for defendant-appellant and cross-respondent (*Messrs. Brach, Eichler, Rosenberg & Silver*, attorneys; *Mr. Raymond I. Korona* on the brief).

*Mr. Walter R. Cohn* argued the cause for plaintiff-respondent and cross-appellant.

The opinion of the court was delivered by
LARNER, J. A. D. This appeal relates to the claim of a subcontractor, Atlas Steel Products Company (Atlas), against a property owner, Central Parkway Associates (CPA), based upon stop notices for work and materials furnished in the construction of a professional office building. In the latter part of 1971 CPA engaged Kolker Construction Corp. (Kolker) as general contractor to construct the building pursuant to a written contract at a total cost of $1,050,000. In December 1971 the owner filed the contract and specifications with the Essex County Clerk in accordance with the provisions of *N. J. S. A.* 2A:44–75.

Kolker engaged several subcontractors, including Atlas, and commenced performance of the contract. The trial

judge found as a fact that as of Novemeber 1972 Kolker defaulted on his contract in several respects, so that by early December 1972 he either abandoned or was justifiably removed from the job.

Between November 2, 1972 and January 1973 Atlas filed and served several stop notices for moneys due from Kolker in the total sum of $78,300, pursuant to *N. J. S. A.* 2A: 44-77 to 79.

· Upon default by Kolker the principals of CPA undertook the completion of the building through the formation of a new corporation[1] as the general contractor and the services of a group of contractors under the supervision of a consulting engineer. Among the contractors retained by the newly formed corporation were Atlas and other firms that had formerly worked on the project under contract with Kolker.

The project continued to near completion as of the time of trial, at a greatly increased cost to CPA. The judge found that the overall cost of construction to the owner was approximately $1,500,000 instead of the Kolker contract price of $1,050,000. Kolker had been paid approximately $700,000 prior to the default and prior to the filing of the stop notices, so that CPA incurred an additional cash payout subsequent thereto to other contractors and materialmen in a sum approximating $800,000.

The filed contract provided for progress payments to Kolker which accounted for the $700,000 paid prior to default. In addition there was a provision for retainages by the owner amounting to 10% of the progress payments, which were withheld from Kolker by CPA. The contract further provided that when the architect issued certificates of payment aggregating $750,000, the owner was obligated to release 5% of the retainage to Kolker, "providing that the

---

[1]This new corporation, Parkway Holding & Construction Company, was concededly the alter ego of CPA, and was considered as such by counsel and the court below.

Contractor is otherwise in full compliance with its obligations under this Agreement and that there are no unsettled claims then pending." The architect's certificates totalled $750,000, but CPA withheld payment of any portion of the retainage because of Kolker's default.

It is implicit in the trial judge's findings that Kolker had not complied with its obligations under the contract and that there were many substantial unsettled claims pending against Kolker, all of which constituted the factual underpinning of the finding that Kolker defaulted under its contract. In fact, subsequent litigation between CPA and Kolker resulted in a consent judgment for $45,000 in favor of CPA against Kolker for the breach of contract.

As a consequence of the foregoing, the trial judge concluded that CPA was legally justified in withholding the total 10% retainage and that as of the time of the filing of the stop notices there were no moneys rightfully due from CPA to Kolker which should have been withheld for the benefit of the stop notice claimant. Not only did the judge find that plaintiff had failed to carry its burden of proving that defendant owed contract moneys to Kolker as of the time of filing the stop notices, but he found affirmatively that there was nothing due to Kolker.

Our review of the record reveals that there is an abundance of credible evidence to support this finding and we therefore accept the same as controlling on appeal. *State v. Johnson*, 42 *N. J.* 146, 162 (1964).

In view of that finding, it follows, as the trial judge acknowledged, that plaintiff is not entitled to recovery under its stop notice claim. Nevertheless, the judge proceeded to impose liability on the theory that CPA made payments to other subcontractors in violation of the priority right of Atlas under *N. J. S. A.* 2A:44–80.

The trial judge found that after Kolker's default and the stoppage of work, CPA or its newly formed corporation engaged three subcontractors, who had performed partially under contract with Kolker, to complete their particular con-

struction functions. As part of the new and direct contracts with these firms, CPA paid to them certain moneys by way of settlement of their claims against Kolker in order to induce them to complete their respective jobs expeditiously. The judge found that CPA paid or agreed to pay the following amounts to subcontractors, $3,200 to Lupton, $5,000 to C. J. Halpin and $5,300 to Daidone Electric. In return for these payments, these subcontractors discharged the stop notices that had been filed subsequent to that of Atlas. Significantly, the judge found that these payments to other subcontractors were made in good faith as a proper business judgment in order to salvage the project after the dilemma caused by Kolker's default.

The judge thus concluded that these payments violated the right of Atlas to the priority to which it was entitled by the earlier filing of its stop notice, and entered judgment in favor of Atlas for $13,500 as damages for the violation of its priority right.

In our view, the judge erred in basing his judgment against CPA upon an alleged violation of stop notice priorities. While *N. J. S. A.* 2A:44–80 does require an owner to pay stop notice claimants in the order in which notices have been filed, this duty does not and cannot arise unless other elements of the statutory scheme are fulfilled. A basic prerequisite to the recovery on stop notice claims against an owner is that the subcontractor establish that moneys were due and owing from the owner to the general contractor as of the time of the filing of the stop notice or subsequent thereto. *N. J. S. A.* 2A:44–78, dealing with the retention of moneys by the owner pursuant to a stop notice, specifically provides that the retention shall be made "out of the amount owing by him on the contract or that may thereafter become due from him on such contract."

In the absence of evidence of advance payments to the general contractor which are contrary to the filed contract provisions, or other collusive conduct designed to frus-

trate the rights of the stop notice claimant,[2] an owner cannot be held liable for the debts of his general contractor if there is no fund which is due and owing to that contractor. *Grunt v. Zapeikov*, 107 *N. J. L.* 143, 144 (E. & A. 1930); *Stone Post Co. v. Corcoran*, 80 *N. J. L.* 549, 551 (Sup. Ct. 1910); *Reeve v. Elmendorf*, 38 *N. J. L.* 125, 130 (Sup. Ct. 1875); *Brunetti v. Grandi and Criscitelli*, 89 *N. J. Eq.* 116, 119 (Ch. 1918). Since a stop notice operates as an assignment *pro tanto* of the money due the contractor, any defense available to defeat the claim of the general contractor is equally available to defeat the claim of the subcontractor. See *Union Bldg. & Inv. Co. v. Forest Hill Apartments, Inc.*, 30 *N. J. Super.* 130, 134 (Law Div. 1954). The rights of the stop notice claimant therefore can rise no higher than the rights of the general contractor, unless the owner has acted in violation of his duty in contravention of the dictates of *N. J. S. A.* 2A:44–85.

 Thus, the trial judge's finding that CPA owed nothing to Kolker because of its default extinguished the right of any stop notice claimant to recover from CPA. Once this fact was established, there was no legal basis for imposing liability regardless of the owner's subsequent arrangements with any of the subcontractors.

 It is manifest that the payments made to the three subcontractors to induce them to enter into a new contract of completion were not in contravention of the statutory duty of the owner. The subcontractors were not paid from a fund owing to the general contractor in satisfaction of their rights as stop notice claimants. Rather, they were paid as a voluntary gesture for practical business purposes in a wholly collateral transaction. And the mere fact that the subcontractors discharged their stop notices as a matter of record is wholly irrelevant on the substantive issue. When Kolker

---

[2]See *N. J. S. A.* 2A:44–85; *Slingerland v. Binns*, 56 *N. J. Eq.* 413, 415 (E. & A. 1898). There is no contention or proof of any such conduct by defendant herein.

defaulted without any basis for a claim against CPA, the latter was free to deal with any subcontractors and make any payments to them without fear of incurring stop notice liability. Such voluntary payments are not inhibited or controlled by the priority provisions of the Mechanics' Lien Law.

The fact that the cost of completion far exceeded the contract price and that the owner had the right of retainage points in the same direction. Even where there is an unpaid balance due to a general contractor under a construction contract which has not been completed, the claim of the owner who expends money to complete the structure following default of the contractor is superior to that of stop notice claimants, unless the contract dictates otherwise. *Jas. Falcone Plumbing & Heating Co. v. Pasquale*, 26 *N. J. Super.* 285, 289 (App. Div. 1953); *Post v. Geldziler*, 105 *N. J. L.* 370 (E. & A. 1929); see *Stone Post Co. v. Corcoran, supra*, 80 *N. J. L.* at 551. Hence, in this case the owner's priority consumed the total contract fund, leaving nothing to which a stop notice claim could attach, regardless of the post-default payments by the owner.

In view of our conclusion that there is no legal basis to sustain the damage award to plaintiff, we find it unnecessary to reach the issue of propriety of the finding below that the release executed by Atlas was not a bar to recovery. For the same reason plaintiff's cross-appeal is without merit.

Judgment is vacated and the case remanded for the entry of judgment in favor of defendant Central Parkway Associates.